# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CASANOVA HAMBRICK,
> Appellant,

v.

UNITED STATES POSTAL SERVICE,
> Agency.

DOCKET NUMBER
DC-0752-14-0454-C-1

DATE: March 8, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Gale Robert Thames, Washington, D.C., for the appellant.

Janelle M. Sherlock, Esquire, Atlanta, Georgia, for the agency.

Tanisha J. Locke, Esquire, Charlotte, North Carolina, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1     The appellant has filed a petition for review of the compliance initial decision, which denied his petition for enforcement. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review, AFFIRM the initial decision, which is now the Board's final decision, and FORWARD the appellant's new allegations of noncompliance to the Washington Regional Office for docketing as a petition for enforcement.

## BACKGROUND

¶2      On February 14, 2014, the appellant filed a Board appeal of the agency's February 11, 2014 decision to remove him for alleged misconduct. *Hambrick v. U.S. Postal Service*, MSPB Docket No. DC-0752-14-0454-I-1, Initial Appeal File (IAF), Tab 1. In August 2014, while the appeal was still pending, the appellant voluntarily retired. Compliance File (CF), Tab 4 at 4. On September 2, 2014, the agency issued the appellant a terminal leave payment reflecting 427.95 hours of annual leave and 16 holiday hours, for a gross amount of $16,329.68 and a net amount of $11,278.85 after deductions. *Id*. at 16. The payment was further reduced by $307.14 to cover an outstanding invoice for health insurance premiums, resulting in a check for $10,971.71. *Id*. at 4 n.1, 16; Petition for Review (PFR) File, Tab 4 at 11-15.

¶3      On November 6, 2014, the parties entered a settlement agreement that resolved the appeal. IAF, Tab 24. The agreement provided, among other things, that the removal would be rescinded and the retirement cancelled, and that the

agency would pay the appellant back pay for the period from February 12, 2014, when he entered nonpay status, until his return to work. *Id*. The following day, the Board's administrative judge issued an initial decision that dismissed the appeal as settled and notified the parties that the settlement agreement had been entered into the record for enforcement purposes. IAF, Tab 25. The initial decision became final when neither party filed a petition for review. *See id*.

¶4 Following the appellant's reinstatement, the agency restored 427.95 annual leave hours and 16 holiday hours and issued him a debt collection notice for $16,329.68. CF, Tab 4 at 4-5, 12, 18. The appellant filed a petition for hearing with the postal Judicial Officer challenging the debt collection notice. *Id*. at 4-5, 12. On April 2, 2015, the agency issued the appellant a back pay check for $10,447.50. *Id*. at 28. The payment reflected a gross back pay amount of $64,149.11, an offset of $16,329.68 to collect the terminal leave payment, and an offset of $9,324 for annuity earnings to be repaid to the Office of Personnel Management, for an adjusted gross amount of $38,395.43. *Id*. at 26, 28. That amount was further reduced by $9,088.34 in tax withholding and $18,959.59 in voluntary deductions, yielding the final figure of $10,447.50. *Id*. Following the payment, the agency notified the postal Administrative Judge, who was presiding over the debt collection proceeding, that it was no longer seeking collection of the $16,329.68 debt. *Id*. at 33. On July 7, 2015, the postal Administrative Judge issued a Final Decision, granting the appellant's petition and finding that the agency "may not collect the $16,329.68 debt at issue." *Id*. at 33-34.

¶5 On September 21, 2015, the appellant filed what appeared to be a petition for enforcement, but he did not explain in his pleading why he believed the agency was in noncompliance. CF, Tab 1. Before filing its response, the agency contacted the appellant's representative to determine the precise nature of the appellant's compliance claims. CF, Tab 4 at 4. The appellant's representative provided the agency two letters, dated August 13 and 25, 2015, respectively, which the agency attached to its response. *Id*. at 12-14. In both documents, the

appellant claimed that the agency had improperly offset the $16,329.68 from his back pay award. *Id*. In support of his claim, the appellant cited the Final Decision in the debt proceeding, in which the postal Administrative Judge stated that the agency "may not collect the $16,329.68." *Id*.; *see id*. at 33-34. In the August 25, 2015 letter, the appellant further stated that the agency had "failed to reconcile" his Thrift Savings Plan (TSP) account. *Id*. at 13.

¶6 In its response to the petition for enforcement, the agency provided evidence that it had paid the appellant back pay as required under the agreement, and had offset $16,329.68 from the gross back pay amount as repayment for 427.95 hours of accrued annual leave and 16 holiday hours for which the appellant had been paid after his separation. *Id*. at 16, 20-26, 28. The agency explained that the reason the postal Administrative Judge stated that the agency "may not collect the $16,329.68" was that the agency was no longer seeking collection, precisely because the debt already had been satisfied by the $16,329.68 offset from the gross back pay award. *Id*. at 5, 33-34. Regarding the TSP matter, the agency provided copies of email correspondence, dated February 23, 2015, in which an agency representative advised the appellant that TSP funds from a back pay award only can be deposited into the G fund, and that it was up to the appellant to contact TSP and ask that the funds be transferred into the C fund. *Id*. at 5, 36. The appellant did not respond to the agency's submission.

¶7 On October 21, 2015, the Board's administrative judge issued a compliance initial decision denying the petition for enforcement. CF, Tab 6, Compliance Initial Decision. This petition for review followed. PFR File, Tab 1. The agency has filed a response and a supplement thereto, and the appellant has filed a reply to the agency's response and supplement. PFR File, Tabs 4, 7-9.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8 Regarding the amount of the back pay award, the appellant appears to contend on review that the agency owes him $5,357.97 because it collected the

full $16,329.68 instead of the $10,971.71 payment he was issued in September 2014. PFR File, Tab 1 at 3. He also contends that the agency failed to explain the $307.14 discrepancy between the $10,971.71 check and the net terminal payment of $11,278.85 recorded on the pay stub. *Id*. at 2-3. In addition, he again argues that the agency disregarded the ruling by the postal Administrative Judge, which he interprets as precluding the agency from offsetting the $16,329.68 debt from his back pay award. *Id*. at 2-4. The appellant also asserts that his gross back pay should have been $77,780 instead of $64,149.11. *Id*. at 3.

¶9 Insofar as the appellant contends that the agency overcharged him by $5,357.97, his calculation fails to take into account that the $16,329.68 overpayment was offset from his gross back pay award, prior to tax withholding and voluntary deductions. *See* CF, Tab 4 at 16, 26. Taking into account tax withholding and voluntary deductions, the effect of the debt collection was to reduce the appellant's net back pay award by the amount of his net terminal leave pay, i.e., $11,278.85. *Id*. As for the $307.14 difference between the net terminal leave pay of $11,278.85 indicated on the pay stub and the $10,971.71 that was paid, the agency has supplied email correspondence from November 2014 in which it explained, to the appellant's evident satisfaction, that the amount was subtracted to repay an outstanding health benefit invoice. PFR File, Tab 4 at 11-14. We further find that the Final Order in the debt collection action did not require the agency to return the amount it previously had collected, and we also find no support for the appellant's contention that the agency miscalculated his gross back pay. In sum, we find that the appellant has not shown that the agency failed to provide him back pay as required by the terms of the settlement agreement.

¶10 The appellant also raises new allegations of noncompliance on review. In particular, he contends that the agency failed to pay him $156 per the terms of the settlement agreement and failed to restore all of the annual leave to which he is entitled. PFR File, Tab 1 at 2, 4. As to the TSP matter, he concedes that his

contributions have been placed in the C fund, as he requested, but he now asserts that the agency "did not give him credit until 04/10/15 nor did he receive matching funds." *Id*. at 4. The agency has addressed the appellant's new allegations of noncompliance in its supplemental response. PFR File, Tab 8. However, allegations of noncompliance with a settlement agreement are properly a matter for initial consideration by the regional office on a petition for enforcement. *Hansson v. Department of the Navy*, 62 M.S.P.R. 228, 232 (1994), *aff'd*, 39 F.3d 1196 (Fed. Cir. 1994) (Table). Accordingly, we forward the appellant's new allegations of noncompliance with the settlement agreement to the Washington Regional Office.[2] *See id.*

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

---

[2] We make no finding as to the timeliness of this new petition for enforcement. *Adamcik v. U.S. Postal Service*, 48 M.S.P.R. 493, 496 (1991) (holding that a petition for enforcement of a settlement agreement must be filed within a reasonable period of time after the appellant discovers the asserted noncompliance).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.